UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY DELISLE,

        Plaintiff,

v.

        CASE NO. 06-11761
        HON. LAWRENCE P. ZATKOFF

SUN LIFE ASSURANCE CO. OF CANADA,

        Defendant.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 12, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter comes before the Court on cross motions for Judgment on the Administrative Record (Docket # 23, 24). The parties have fully briefed the motions. The Court finds that the parties have adequately set forth the relevant law and facts such that oral argument would not aid in the disposition of the instant motions. E.D. MICH. L.R. 7.1(e)(2). Accordingly, the Court ORDERS that the motions be decided on the briefs submitted. For the reasons set forth below, Plaintiff's motion is GRANTED, and Defendant's motion is DENIED.

## II. BACKGROUND

This action involves long-term disability ("LTD") benefits under an employee benefits plan

that is subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B) ("ERISA"). On January 8, 1996, Plaintiff began working for Sidney Krandall & Sons Jewelers ("Krandall") in Troy, Michigan, as Director of Operations and Chief Financial Officer. As Krandall's employee, Plaintiff participated in a group disability insurance plan, which was underwritten and administered by Defendant, Sun Life Assurance Company of Canada. Plaintiff worked without incident until suffering head, neck, and back injuries in a January 1998 automobile accident. Her condition following the accident ultimately necessitated a spinal fusion procedure. A second automobile accident on August 24, 2000, compounded these injuries. As a result of the second accident, Plaintiff also suffered a closed head injury. Plaintiff alleges that the injuries sustained from these accidents caused her health to "spiral downward so that she could no longer function as Director of Operations and led to her total disability." Plaintiff continued to work following these accidents, however, and did not submit a claim for disability benefits until several months after her termination.

On April 17, 2002, Plaintiff arrived at Krandall's with the intention of working as she normally would. Krandall, however, terminated Plaintiff's employment that day "because of poor performance" and because "she was not doing her job." Krandall offered Plaintiff a severance package, which Plaintiff rejected. Krandall compensated Plaintiff for the entirety of April 17. On the same day as her termination from Krandall, Plaintiff informed her therapist, Diane P. Cushing, M.A., L.P.C., that she was fired "based on personality issues vs. job performance." At that time, Plaintiff contemplated bringing suit against Krandall, but she did not mention any disability or inability to perform her occupation. Plaintiff filed a claim for unemployment benefits, indicating on her application both that she was ready to work and that Krandall released her on account of

"lack of work." She ultimately received these unemployment benefits and also obtained employment after her termination at Krandall. Plaintiff told Cushing that she wanted to quit her new job because of frustration regarding the number of hours she would have to work. Plaintiff was fired from this position, apparently because of her refusal to work excessive hours.

On March 6, 2003, Plaintiff submitted a claim for LTD benefits under Krandall's disability plan. Defendant's policy provides for monthly disability payments when an employee cannot perform the material duties of her "own occupation" on account of "injury or sickness." Material or substantial duties include "the essential tasks, functions, skills, or responsibilities required by Employer for the performance of the Employee's Own Occupation," where "own occupation" references "the usual and customary employment, business, trade, profession, or vocation that the Employee performed as it is generally recognized in the national economy immediately prior to the first date Total or Partial Disability began." Employees must demonstrate that this inability to perform their own occupations, resulting from total or partial disability, persists for a continuous period of ninety days (called the Elimination Period) during which period no LTD benefit is payable. The disability must also persist throughout the twenty-four months following the Elimination Period. The policy mandates that Plaintiff "provide proof of continuing Total . . . Disability."

In support of her claim, Plaintiff submitted Attending Physician Statements from five individuals, all of whom detailed diagnoses stemming from Plaintiff's automobile accidents. Among other maladies, the doctors diagnosed Plaintiff with cervical and lumbar radiculopathy, major depressive disorder, mood disorder, and acute traumatic cervical subluxation. The doctors also observed serious impairment in problem solving ability, an overall decline in intellectual functioning, suicidal ideation, and cognitive disorder due to her motor vehicle accident. The

physician statements yielded a consensus that Plaintiff has a physical and mental "Class 5 Level of Functional Impairment," signifying severe limitation of functional capacity rendering Plaintiff incapable of minimum sedentary activity and psychological, physiological, personal, and social adjustments. Plaintiff was granted Social Security Disability Insurance Benefits, and the Social Security Administration ("SSA") concluded that Plaintiff was totally disabled under its rules as of April 17, 2002.

Despite Plaintiff's offering of proof regarding her disability, Defendant denied Plaintiff's claim on March 28, 2003, alleging that Plaintiff lacked coverage on the date of her apparent disability because she had been fired. Plaintiff appealed, complete with 800 pages of medical support and documentation, but was once again denied. After Plaintiff exhausted administrative channels, she brought suit. In *Delisle v. Sun Life Assurance Co.*, No. 04-60163 (E.D. Mich. Sept. 30, 2005), the Court held that although Defendant's Insurance Policy vested discretion in Defendant, Defendant's interpretation of the disability plan's eligibility standards was arbitrary and capricious. The Court further held that Defendant did not waive its ability to contest Plaintiff's claimed date of disability. In making its determinations, the Court explicitly avoided consideration of whether Plaintiff was, in fact, disabled. Accordingly, the Court remanded the case to determine whether Plaintiff was disabled on April 17, 2002.

On remand, Defendant referred Plaintiff's file to three physicians and a rehabilitation consultant. These individuals conducted file reviews of Plaintiff's materials. Although Defendant's physicians concurred with Plaintiff's physicians regarding evidence of major depressive disorder and anxiety disorder, they discovered no evidence that they believed would have rendered Plaintiff unable to perform her functions as of April 17, 2002. These physicians also uncovered no evidence

4

of complaints regarding cognitive problems until after Plaintiff's termination from Krandall. Plaintiff's medical records, in contrast, indicated that Plaintiff's physicians had previously forbidden Plaintiff from working and that her physical impairments led to restricted motion of the neck and limitations on lifting. These records also indicated a retrogression in Plaintiff's mental competence, intelligence, and memory. In short, the physicians on both sides agree with respect to the basic medical diagnoses but disagree almost completely regarding the implications of these diagnoses.

On January 20, 2006, Defendant informed Plaintiff that she was not disabled under the policy. Plaintiff appealed the denial. Defendant referred her file to three different physicians whose findings convinced Defendant that Plaintiff "was in her usual state of health as of April 17, 2002. She reported for work and was fired from her position. There is no evidence that she was unable to work on that date." Defendant thus denied Plaintiff's appeal. Plaintiff seeks judicial review of Defendant's denial in this present suit.

### III. LEGAL STANDARD

In ERISA claims contesting a denial of benefits, "the district court is strictly limited to consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998). The court is required to review the plan administrator's decision based solely on the Administrative Record and render findings of fact and conclusions of law accordingly. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). In evaluating an administrator's or fiduciary's denial of benefits under an ERISA governed plan, courts must apply a *de novo* standard of review unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the

plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). When the plan clearly confers discretion on the administrator to determine eligibility or construe the plan's provisions, federal courts review the administrator's decision under an "arbitrary and capricious" standard. *See Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991).

## IV. ANALYSIS

**A. Standard of Review**

Under the doctrine of collateral estoppel, the findings in *Delisle*, No. 04-60163, bind this Court with respect to the issue of the appropriate standard of review. The Sixth Circuit delineates five basic requirements for the application of collateral estoppel:

> (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Hammer v. I.N.S.*, 195 F.3d 836, 840 (6th Cir. 1999). Here, the standard of review determination mirrors the issue resolved in this case's previous rendezvous with the Eastern District of Michigan. Since the issue has already been litigated, decided, and involves the same parties on both sides, the previous decision noting, "The Sun Life insurance policy vests discretion in Sun Life" must be accorded preclusive effect. *Delisle*, No. 04-60163, at 4. Accordingly, Defendant's decision to deny benefits to Plaintiff shall be reviewed under the arbitrary and capricious standard.

Although the arbitrary and capricious standard is deferential to plan administrators, "it is not

a rubber stamp for the administrator's determination." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006). Under the arbitrary and capricious standard, the administrator's decision will be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

**B.     Sun Life's Denial of Benefits**

Plaintiff alleges that Defendant's decision was arbitrary and capricious when balanced against the five opinions of her physicians and counselor and the SSA's determination that she was totally disabled as of April 17, 2002. Defendant bases its denial on 1) the fact that Plaintiff arrived at work on the date of the declared disability, 2) the words and behavior of Plaintiff in the months following her termination, and 3) the file reviews of Plaintiff's condition by six different physicians. The Sixth Circuit's jurisprudence establishes a number of factors to consider when determining whether a plan administrator's denial of benefits in an ERISA claim was arbitrary and capricious. Chief among these factors are the existence of a conflict of interest; SSA determinations of total disability; and the quality and quantity of medical evidence, including the nature of the review conducted by the administrator. *See, e.g.*, *id.* at 666–74; *Evans v. Unumprovident Corp.*, 434 F.3d 866 (6th Cir. 2006).

*1. Conflict of Interest*

Plaintiff alludes to the existence of a conflict of interest that compromises Defendant's ability to render neutral opinions. Defendant rebuts such an allusion, contending that Plaintiff failed to

7

present "significant evidence" of any conflict of interest. Nevertheless, Defendant acknowledges that the existence of such a conflict would constitute a factor for consideration.

ERISA mandates that insurance companies "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries . . ." 29 U.S.C. § 1104(a)(1); *see also Rochow v. Life Ins. Co.*, 482 F.3d 860, 865 (6th Cir. 2007). Conflicts of interest involving a plan administrator must be considered against this guiding principle when evaluating the actions of the plan administrator. *See Firestone*, 489 U.S. at 115. When a party possesses authority to decide eligibility and to pay plan benefits, a natural conflict of interest arises. *Marks v. Newcourt Credit Group*, 342 F.3d 444, 457 (6th Cir. 2003). Here, Defendant determined that Plaintiff was not disabled based on the assessments of several physicians, whom Defendant compensated. Defendant had strong incentive to contract with physicians who were inclined to find against the existence of LTD benefits, especially given Plaintiff's relatively young age. In such situations, courts have observed "an incentive . . . to terminate coverage or deny the claim. Under such facts, 'the potential for self-interested decision-making is evident.'" *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (quoting *Univ. Hosps. v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.4 (6th Cir. 2000)).

Conflicts of interest such as those present in this case warrant attention when determining whether a plan administrator's decision was arbitrary and capricious. *See, e.g.*, *Firestone*, 489 U.S. at 115; *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947 (6th Cir. 2005); *Calvert* 409 F.3d at 292–93. Other jurisdictions have utilized different standards of review when conflicts of interest are present. *See Adams v. Thiokol Corp.*, 231 F.3d 837, 842 (11th Cir. 2000). The Sixth Circuit does not employ a different standard but rather considers the conflict as a factor in applying

the arbitrary and capricious standard. In this case, then, Defendant's conflict of interest must be factored into the determination of whether Defendant's denial of benefits was arbitrary and capricious.

*2. Social Security Administration's Determination of Total Disability*

Plaintiff maintains that Defendant did not accord proper weight to the SSA determination that she was totally disabled on April 17, 2002. Defendant counters that it is not required to attach dispositive significance to such determinations. Defendant argues that any regard a plan administrator may have for SSA determinations is lessened when, as here, the plaintiff provides only a copy of the SSA Notice of Award and not the actual opinion of the SSA.

Although not controlling, the existence of Social Security Disability Insurance Benefits does play a role in determining whether a plan administrator's decision was arbitrary and capricious. *Calvert*, 409 F.3d at 294 ("the SSA determination, though certainly not binding, is far from meaningless"). In light of potential differences between SSA and plan administrator standards, the Supreme Court has noted that it is inappropriate to impose automatically the same standards for both the SSA and individual plan administrators. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 824 (2003). The SSA employs a much broader definition of "disabled," applying it to one who "cannot, considering his age, education, and work experience, engage in *any other kind of substantial gainful work* which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives." 42 U.S.C. § 423(d)(2)(A) (emphasis added). The SSA's conception of disability encompasses Defendant's narrower "own occupation" standard. Put another way, any individual disabled under the SSA's definition would also be disabled under

9

Defendant's policy. Yet, the Sixth Circuit has interpreted the Supreme Court precedent to mean that "an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan." *Whitaker*, 404 F.3d at 949. Standing alone, then, Defendant's decision to deny benefits cannot be refuted as arbitrary and capricious simply because it reached a result different from the SSA.

SSA determinations garner more attention when the plan administrator requires and actively requests the claimant to apply for such Social Security benefits. *See id.* Under such circumstances, "the grant of social security disability benefits . . . brings the case within the penumbra of the doctrine of judicial estoppel." *Glenn*, 461 F.3d at 667–68 (quoting *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998)). When a plan administrator facilitates a successful Social Security claim, it effectively "prevails" in the sense that it reduces the amount of the claim, and therefore, the administrator should not be able to deny the finding. *Id.* In this case, it does not appear from the record that Defendant actively assisted Plaintiff with her claim. The insurance policy, however, does mandate that a claimant "apply for any Other Income Benefits in which the Employee may be eligible," including Social Security benefits. The policy also indicates a willingness on Defendant's part to assist the employee with the Social Security claim process. Because Defendant's policy effectively requires Social Security disability applications, Defendant should not be able to reject blindly the SSA's determinations.

Defendant argues that recent decisions from other courts have lessened the significance of a SSA finding that an employee is totally disabled when the plan administrator is not provided with the full SSA opinion or with the information submitted to the SSA in seeking the award. *Mitchell v. Hartford*, No. 05-432, 2006 U.S. Dist. LEXIS 37350, at *16 (W.D. Ky. Jun. 6, 2006); *see also*

*Washington v. Ameritech Sickness & Accident Disability Benefit Plan*, 66 Fed. Appx. 656, 659 (7th Cir. 2003); Harbison *v. Hartford Life & Accident Ins. Co.*, No. 03-856, 2007 U.S. Dist. LEXIS 41842, at *21 (S.D. Ohio Jun. 5, 2007). According to this line of cases, the award of social security benefits does not retain independent relevance to ERISA concerns when the plan administrator is unable to reference the evidence used by the SSA in making its determination. *Mitchell*, No. 05-432, at *16. Here, Defendant argues that Plaintiff failed to provide Defendant with the opinion of the SSA, thereby limiting the amount of credence that Defendant was required to afford the decision. But it contradicts logic to suppose that a plaintiff would submit evidence of total disability to the SSA while withholding that evidence from the plan administrator. It is far more likely that the medical materials that a plaintiff furnishes to a plan administrator correlate with those provided to the SSA, thereby constituting "the specific evidence used to support the award." *Id.* Even assuming that Plaintiff disclosed evidence to Defendant different from the evidence she disclosed to the SSA, the notion that a plan administrator may ignore the SSA's determination of total disability simply because the claimant failed to include a copy of the SSA's opinion runs contrary to the very principles that govern ERISA.[1] 29 U.S.C. § 1104(a)(1).

That Defendant apparently gave little or no consideration to the Social Security ruling in making its determination "does not render the decision arbitrary per se, but it is obviously a significant factor to be considered upon review." *Glenn*, 461 F.3d at 669. The SSA determination

---

[1] It is perplexing to think that a plan administrator, such as Defendant in this case, could know that a claimant applied for, and was awarded, disability benefits under the SSA yet be able to ignore such a finding because the claimant furnished only the SSA notice and not the actual SSA opinion. A plan administrator must not benefit from its silence when a simple request to the claimant to furnish the relevant SSA opinion would produce the apparently necessary and desired materials. Punishing claimants, for whose benefit ERISA exists, because of an omission of several readily accessible pieces of paper is patently absurd.

that Plaintiff was totally disabled operates in her favor, especially considering the broader definition of disability under SSA standards.

### 3. *Quality and Quantity of Medical Evidence*

The Court's obligations arising under the arbitrary and capricious standard "inherently include[] some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161 (6th Cir. 2003). In rendering a decision under the arbitrary and capricious standard, the Court should also consider whether the plan administrator's physicians conducted individual exams or file reviews. *Glenn*, 461 F.3d at 667. Generally, administrators are not obligated to conduct individual exams and thus the failure to do so does not, by itself, signify impropriety. *Calvert*, 409 F.3d at 295. Although file reviews are not "inherently objectionable," they may in certain situations "raise questions about the thoroughness and accuracy of the benefits determination." *Id.* The Administrative Record abounds with medical evidence from multiple individuals. Plaintiff's physicians concluded that Plaintiff was totally disabled as of April 17, 2002, as a result of various mental and physical disabilities. Defendant's physicians concurred in several of the major diagnoses set forth by Plaintiff's physicians but disagreed with the date of disability. The following sets forth the general synopses from both sides' medical evidence.

**a. Plaintiff**

Dr. Robert Ho, M.D., treated Plaintiff monthly from January 11, 1999, until July 29, 2003. He performed Plaintiff's spinal fusion procedure and placed her on "no work" status at various

12

points while treating her. Ho diagnosed Plaintiff with cervical and lumbar radiculopathy and noted functional impairment of restricted extension of the neck. In February 2003, he opined that Plaintiff suffered from cervical and lumbar radiculitis, chronic neck and back injuries, and chronic pain syndrome. Ho concluded that Plaintiff was unable to work "as a result of the progressive nature of her medical conditions."

Diane Cushing, Plaintiff's licensed professional counselor, treated Plaintiff weekly for cognitive behavioral therapy beginning in December 2001. Cushing observed deepening depression due to pain increases and loss of vocation and social life. Cushing also diagnosed Plaintiff with Major Depressive Disorder and concluded that she was unable to work.

Dr. Barbaranne Branca, Ph.D., began treating Plaintiff after her termination from Krandall. Branca concluded that Plaintiff "has significant loss of psychological, physiological, personal and social adjustments of severe limitation." She further noted that Plaintiff suffered from post traumatic syndrome following her closed-head injury. According to Branca, Plaintiff's intellectual, memory, and problem-solving functioning declined such that she "would have difficulty in the everyday world." Branca diagnosed Plaintiff as having "a major depressive disorder, recurrent episodes severe with intermittent suicidal ideation, cognitive disorder due to her motor vehicle accident, mood disorder associated with both psychological factors and general medical condition."

Dr. William Rudy, D.O., also indicated that Plaintiff suffered from memory retrogression. He imposed physical limitations on Plaintiff and classified her as suffering from a Class 5 mental impairment. Rudy treated Plaintiff for double vision and tremors, and the doctor noted that she suffered from a closed head injury, amnesia, blackouts, and cognitive difficulties.

Dr. Renee Noomie, M.D., also treated Plaintiff, diagnosing her with Acute Traumatic

Cervical Subluxation. Noomie asserted that Plaintiff was unable to work due to acute traumatic cervical subluxation and a closed head injury.

Dr. Premod Kerkar, M.D., who specializes in pain management, treated Plaintiff for the pain associated with her various spine and back injuries. He provided Plaintiff with nerve blocks for her pain and concluded that she was disabled as of April 17, 2002.

### b. Defendant

Defendant consulted six physicians who conducted file reviews of Plaintiff's condition. None of these physicians actually treated or spoke with Plaintiff. Rather, their reviews focused on the information present in the Administrative Record at the dates of their respective reviews. Defendant maintains that personal examinations would have been moot since they would have been conducted several months after the date of alleged total disability.

The physicians conducting reviews prior to Defendant's first denial of Plaintiff's claim concur in many of Plaintiff's physicians' findings:

- Dr. Margaret O'Connor, Ph.D., determined that the record supported diagnoses for major depressive disorder and anxiety disorder.

- Dr. Victor Himber, M.D., found support in the record for the aforementioned disorders as well as several others.

- Dr. James Sarni, M.D., indicated that the record supported findings of lumbar and cervical spine restrictions such that Plaintiff was limited to work at or below shoulder level.

Nonetheless, each of these doctors discredited April 17, 2002, as the date of total disability for

Plaintiff. Defendant's medical consultants instead observed that the record did not demonstrate a change in Plaintiff's condition around April 17 that would justify a finding of total disability. These physicians also observed that Plaintiff's doctors based some of their determinations on Plaintiff's self-report.

The physicians conducting file reviews for Defendant on appeal also concurred in some of the medical findings:

- Dr. Ronald Pies, M.D., noted "[n]otwithstanding the patient's chronic psychiatric problems, which I do not wish to minimize, there is no credible, objective, contemporaneous evidence of an incapacitating disorder . . ."

- Dr. Richard Corzatt, M.D., found sufficient evidence in the Administrative Record to support diagnoses of degenerative disc disease of the cervical and lumbar spine. He determined that it was "reasonable *to assume* that on 4/17/02 the claimant had functional capacity for a light occupation." (emphasis added).

- Dr. Cris Johnston, Ph.D., noted the lack of any complaint regarding neuropsychological impairment until after Plaintiff's employment was terminated. Johnston concluded that "there is insufficient reliable and valid objective evidence to substantiate a neuropsychological diagnosis prior to 4/17/02."

Based on the findings of these physicians, Defendant once again denied Plaintiff's claim.

Defendant observes several concerns with Plaintiff's physicians. For example, although Plaintiff's physicians grounded their findings on physical traumas and resulting psychological ramifications, tests conducted under Dr. Ho's supervision in April 2002 revealed "no surgically

correctable problems,"[2] and the doctor made no indication of any disability until after April 17, 2002. Defendant also questions the reliability of selecting April 17 as the date of disability because Branca began treating Plaintiff several months after the termination of her employment with Krandall, and Ho admitted uncertainty regarding how the disability date was determined.

Defendant also points to circumstances surrounding Plaintiff's termination as evidence that she was able to work and, consequently, not disabled. Under the terms of Defendant's policy, a total disability renders the employee "unable to perform the Material and Substantial Duties of [her] Own Occupation." It is the contention of Defendant that if Plaintiff was totally disabled on April 17, 2002, she would not have arrived at Krandall's with the intention to work. Moreover, Defendant observes that Plaintiff only stopped working that day because Krandall terminated her employment, not because she was physically or mentally unable to work. Defendant also notes that on the very day of her firing, Plaintiff had the opportunity to explain the termination to her therapist; however, she made no mention of disability or inability to work– only that she was fired for personality reasons. Defendant also finds it telling that Plaintiff later filed for unemployment, stating that she was ready to return to work and that she was fired only because of a lack of work. Finally, Defendant argues that Plaintiff acquired another position after being fired and, while the policy acknowledges that brief periods of employment do not necessarily render an employee of sound health, the fact that this alternative employment terminated because of Plaintiff's disagreement with working excessive hours suggests that she was otherwise able to work.

### c. Analysis

---

[2] Dr. Ho did perform a spinal fusion procedure on Plaintiff several years earlier.

Plaintiff's situation is unique in the sense that her disability cannot be attributed to one event. Further, her disability, as supported by her physicians, has worsened progressively. In *Rochow*, the court faced a similar type of disability. There, the plaintiff suffered various symptoms as a result of encephalitis– short-term memory loss, chills, sporadic sweating, and stress at work. Because of sub-standard performance, Rochow was demoted from his position as President. His symptoms worsened such that he was no longer able to perform the functions of even his demoted position. Rochow's physician concluded that "[t]he patient's history fits better with a more slow onset process." *Rochow*, 482 F.3d at 863. The reasoning of the *Rochow* district court provides parallels to the present case. Although the *Rochow* court acknowledged the fact that the plaintiff "was able to work is certainly evidence for the Defense," the court found other factors warranted a finding in his favor. *Id.* at 864. Specifically, the court observed that when the plaintiff "wasn't able to do the work that he had been doing before, and we have such a severe loss of memory, compounded by the depression, and it is clear that that memory loss . . . may have contributed to his being demoted before he claimed disability, I think he has prevailed." *Id.* The court interpreted the medical findings "in the context of his job, career– his career path, which was downhill." *Id.* at 865. That context, coupled with "the lack of any medical evidence presented in support of finding him not disabled" compelled a finding for the plaintiff. *Id.*

The *Rochow* court's decision withstood scrutiny on appeal, as the appellate court noted, "there is no 'logical incompatibility between working full time and being disabled from working full time.'" *Id.* (quoting *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003)). Rochow, like Plaintiff in this case, was terminated from his position "because he could no longer perform the duties required of his position." *Id.* The *Rochow* court's decision was

17

also grounded on the fact that the company's denial of benefits did not seem to be made solely in the interest of the participants and beneficiaries as required by ERISA. *Id.* at 866. In the instant case, Plaintiff alleges, and her physicians attest, that the injuries she suffered in her two car accidents ultimately progressed to her total disability. The fact that she was fired for "not doing her job" validates this progression. She began working for Krandall six years prior, and the Administrative Record indicates no previous dissatisfaction with her performance. The most likely explanation for the termination of Plaintiff's employment is that, over time, chronic pain from objectively verifiable back and neck conditions and increasing depression interfered with her employment performance.

Defendant in this case argues against the applicability of *Rochow* because that case involved little or no medical evidence contradicting Rochow's disability. Although it is true that Defendant has presented significantly more medical documentation than the defense in *Rochow*, the evidence is nonetheless unpersuasive. Defendant's medical consultants reject unanimously Plaintiff's disability as of April 17, yet they concede the veritable cornucopia of afflictions from which she suffers. Further, they cannot state conclusively that Plaintiff was not disabled on April 17. In fact, one physician *assumed* that she was able to perform *light* work. Defendant's physicians grounded their determinations on the lack of any "significant change" leading up to the April 17 disability date that would render Plaintiff totally disabled. Plaintiff's disability, however, progressed slowly over a period of years. Given the progressive nature of Plaintiff's disability, no significant change would be apparent.

Defendant's medical consultants found bases for many of Plaintiff's maladies but, without conducting personal examinations, discounted the effect of these maladies on her ability or inability to work. Had Defendant's consultants disputed the major diagnoses of Plaintiff's physicians, this

18

case might reach a different result. Given the consultants' concessions, the SSA determination of total disability, and the inherent conflict of interest, the major factors to be considered fall in favor of Plaintiff. Further, Defendant discounts elements of Plaintiff's medical evidence because some of her physicians relied on Plaintiff's own statements. This dismissal of a plan participant's testimony, especially when that testimony enjoys the support of medical evidence, belies claims of neutrality and good faith. Thus, like *Rochow*, it does not appear that Defendant made its decisions "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1); *Rochow*, 482 F.3d at 866. In light of these considerations, Defendant's denial of benefits to Plaintiff was arbitrary and capricious.

## V. CONCLUSION

IT IS ORDERED that Defendant's Motion for Judgment on the Administrative Record is DENIED, and Plaintiff's Motion for Judgment on the Administrative Record is GRANTED and that this case be sent to Defendant for a computation of benefits to which Plaintiff is entitled.

IT IS SO ORDERED.

Date: October 12, 2007
                                      s/Lawrence P. Zatkoff
                                      LAWRENCE P. ZATKOFF
                                      UNITED STATES DISTRICT JUDGE